155 N.J. Super. 106 (1978)
382 A.2d 407
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT RICHARDS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 11, 1977.
Decided January 4, 1978.
*109 Before Judges CONFORD, MICHELS and PRESSLER.
Mr. John A. Yacovelle argued the cause for appellant.
Mr. Larry R. Etzweiler, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey).
The opinion of the court was delivered by PRESSLER, J.A.D.
Defendant Robert Richards was convicted by a jury of possession of a substantial quantity of marijuana and of possession thereof with intent to distribute in violation of N.J.S.A. 24:21-20(a) (3) and 24:21-19(a) (1), respectively. He appeals on the single ground that the trial judge erred in denying his motion for judgment of acquittal at the conclusion of the State's case.[1]
It is well settled that the motion for judgment of acquittal must be granted if the State's evidence, both direct and circumstantial, viewed in its entirety and giving the State the benefit of all evidence favorable to it and all favorable inferences which could reasonably be drawn therefrom, could not permit a reasonable jury to find guilt of the charge beyond a reasonable doubt. State v. Reyes, 50 N.J. 454, 458-459 (1967). While the rule is thus readily stated, its application can be an inordinately difficult task in a case as close as we find this one to be. The specific question requiring determination here is whether the facts proved by the State raise the permissible inference or merely the speculation that defendant's constructive possession of the marijuana *110 was, as is statutorily required, either knowing or intentional. See State v. DiRienzo, 53 N.J. 360, 377 (1969).
The State's proofs, viewed in their entirety and most favorably to its theory of guilt, present the following factual picture. In late October or early November 1973 Police Lieutenant Paradise of Pine Hill, New Jersey, received a telephone call from a Los Angeles police officer advising him that the authorities there had intercepted a 35-pound package while in United Parcel Service (UPS) custody, which contained 15 large plastic bags of marijuana. The package, whose transit had originated in California, was addressed to a David Speigal at a fictitious California address. The shipping label bore defendant's name as the sender and his return address shown thereon was his actual residence in Pine Hill, New Jersey. Lieutenant Paradise was further advised that the Los Angeles police were sending the package to him for further police action in New Jersey. It arrived on November 5 in an outer wrapping provided by the Los Angeles Police Department, removal of which left the package as originally sealed, labeled and sent. At about noon on November 9, a Friday, the package was delivered to defendant's apartment by Detective Booker of the Pine Hill Police Department pursuant to arrangements made by the Pine Hill police and UPS. Detective Booker, dressed in a UPS uniform and provided with a UPS delivery receipt pad, was driven to the apartment in a UPS truck by a uniformed UPS employee. He brought the package to the apartment door, which was promptly opened for him by defendant's wife, who signed for the package but declined Detective Booker's offer to carry it up the stairs for her. Accordingly, he left the package just inside the doorway of the apartment at the bottom of the staircase.
The UPS truck had been followed by an unmarked police surveillance van. Both the front and rear of the apartment, which was a second-floor unit in a typical garden apartment complex served by its own interior streets, was kept under constant surveillance by Pine Hill police officers from the *111 moment the package was delivered shortly after noon on Friday until 11 A.M. the following Monday morning when a search warrant was obtained and executed. The results of the surveillance consisted in totality of these observations: About 20 minutes after the delivery plaintiff's wife emerged from the apartment and drove away. The apartment was apparently unoccupied and nobody either entered it or left it or was seen in its immediate vicinity until 7:30 on Saturday evening, when an unidentified woman drove up in front of the apartment, entered it and emerged shortly thereafter with a small white poodle, which she took away with her. Two hours later an automobile occupied by five people stopped in front of the apartment for about a minute and then drove approximately 100 feet further on to where the surveillance van was parked. One of the male passengers, not defendant, got out, walked around the van, looked into it several times, and then reentered the vehicle which once again pulled up in front of the apartment. After about another minute it left the apartment complex. The van was unoccupied, the surveillance being then conducted from a vacant apartment across the street from defendant's apartment. Lieutenant Paradise, who was in the vacant apartment, observed the movements of the automobile and the inquisitive passenger and radioed a patrol car stationed outside the complex, directing the patrol officer to stop the car to give the operator a summons because of a defective light, and to ascertain the identity of the occupants. Two of the occupants were defendant and his wife, who apparently identified themselves with credentials listing addresses different from the Pine Hill apartment. The car was searched, nothing incriminating was found and it proceeded on its way. No activity of any other kind was observed by the surveillance team in or near the apartment for the balance of the weekend.
No one returning to the apartment by Monday morning, a search warrant was then obtained and executed by Lieutenant Paradise and others from his department, including Detective *112 Booker, who ascertained that the package he had delivered the previous Friday was exactly where he had left it and apparently untouched. The search of the apartment yielded the discovery of three pipes and a roach clip (a marijuana holder). A laboratory analysis of the residue of the pipes showed that one contained ordinary tobacco, one contained less than a thousandth of a gram of marijuana and the other contained a residue of 1/300 of a gram of marijuana. As a result of fingerprint and handwriting samples provided by defendants as well as a person named David Speigal, the State's forensic expert was unable to identify either the fingerprints on the package or the writing on the address label as those of any of the three. According to laboratory analysis the contents of the package consisted of approximately 28 pounds of marijuana, having a wholesale value of approximately $5,600 and a retail or "street" value of approximately $33,000.
In summary, the facts as of the end of the State's case[2] showed that the package of marijuana bore defendant's return address; that it was delivered to his residence where delivery was accepted by his wife; that he himself did not return *113 to his apartment at any time between the time of the delivery and the execution of the search warrant three days later, and that he had been a passenger in a vehicle which spent several minutes cruising in the immediate vicinity of the apartment on Saturday night, another one of whose passengers observed the surveillance vehicle. Do these facts raise an inference which would permit a jury to find beyond a reasonable doubt that defendant both knew of the delivery of the package to his apartment and knew that it contained contraband? We think not.
We note preliminarily that the validity of the issuance of the search warrant and its execution have not been here challenged. We have heretofore sustained the validity of a search warrant issued to law enforcement authorities in connection with their controlled mail delivery to the named recipient of a package which they know contains controlled dangerous substances, even where the issuance of the warrant is only in anticipation of a controlled delivery not yet accomplished. State v. Mier, 147 N.J. Super. 17 (App. Div. 1977). Cf. State v. Smith, 113 N.J. Super. 120, 127-128 (App. Div. 1971), certif. den. 59 N.J. 293 (1971). But existence of probable cause for the issuance of a search warrant is not dispositive of the question, not before addressed by our courts, of the nature and quantum of proof necessary to sustain a conviction of a possessory offense factually predicated upon a controlled mail delivery of contraband.
Other jurisdictions which have dealt with this problem have uniformly concluded that knowing or intentional possession cannot be inferred merely from the fact of delivery to defendant by mail or common carrier of a sealed package containing the illegal goods, and that acceptance of the package by itself cannot yield an inference of knowledge by the recipient of its contents. Rather, something more by way of attendant circumstances must be shown from which an inference can be drawn that defendant also knew what was in the package and intended to assert possessory control over *114 it. The reason for the "something more" requirement is evident. Without it the recipient of the package would be liable to conviction, not because of the criminality of his own behavior but because of the wholly unilateral act of the sender. Obviously, in a jurisprudential system dependent upon substantive due process, criminal consequences cannot be permitted to attach to an everyday and commonplace occurrence over which one has no control, such as here, the unanticipated receipt of mail. See, e.g., People v. Ackerman, 2 Ill. App.3d 903, 274 N.E.2d 125 (App. Ct. 1971); People v. Hesse, 18 Ill. App.3d 669, 310 N.E.2d 199 (App. Ct. 1974); People v. Larsen, 180 Colo. 140, 503 P.2d 343 (Sup. Ct. 1972); People v. Hankin, 179 Colo. 70, 498 P.2d 1116 (Sup. Ct. 1972); People v. Bennett, 183 Colo. 125, 515 P.2d 466 (Sup. Ct. 1973); People v. Patello, 41 A.D.2d 954, 344 N.Y.S.2d 33 (App. Div. 1973); People v. Reisman, 29 N.Y.2d 278, 327 N.Y.S. 2d 342, 277 N.E.2d 396 (Ct. App. 1971), cert. den. 405 U.S. 1041, 92 S.Ct. 1315, 31 L.Ed.2d 582 (1972); Commonwealth v. Aguiar, 350 N.E.2d 436 (Mass. Sup. Jud. Ct. 1976) (not yet officially reported); State v. Trimbell, 64 Wis.2d 379, 219 N.W.2d 369 (Sup. Ct. 1974); State v. Christel, 61 Wis.2d 143, 211 N.W.2d 801 (Sup. Ct. 1973); State v. Doerge, 11 Or. App. 602, 504 P.2d 766 (Ct. App. 1972); State v. Collins, 186 Neb. 50, 180 N.W.2d 687 (Sup. Ct. 1970); cert. den. 403 U.S. 909, 91 S.Ct. 2217, 29 L.Ed.2d 685 (1971); Commonwealth v. Sterling, 241 Pa. Super. 411, 361 A.2d 799 (Super. Ct. 1976).
In all of these cases a controlled mail delivery of controlled dangerous substances was made to the defendant and each of them appealed his ensuing conviction on the ground here urged, namely, that his motion for acquittal should have been granted because of the insufficiency of the State's proof of his knowing or intentional possession. The conviction was reversed on that ground in four of these cases, Ackerman, Larsen, Patello and Sterling. In the first three of these the arrest was made virtually simultaneously with *115 the delivery of the sealed package to the defendant without him having taken or having been afforded the opportunity to take any incriminating action with respect to the package, or even having been afforded the opportunity of opening it. In Sterling the arrest was made about 45 minutes after a package containing hashish and addressed to a third person in care of defendants was removed by defendants from their mailbox and brought by them into their home. The package was found unopened on the kitchen table and showing no sign of having been touched or its contents investigated by defendants. A search of their home turned up some marijuana seeds, marijuana cigarette butts and pipes used for smoking marijuana. This evidence was held to be insufficient as well.
In each of the other cited cases the conviction was sustained on the finding that one of two general factual patterns had occurred. Either the arrest, which was virtually simultaneous with the delivery, was predicated not only on the delivery itself but on a totality of circumstances surrounding the delivery which implied defendant's knowledge of the contents of the package and intent to exercise dominion over it, or the arrest was made some time after the delivery had been completed and defendant, in the interval between the delivery and the arrest, took some affirmative action vis-a-vis the package from which these inferences of knowledge and dominion could be drawn. Representative of the first of these factual patterns is People v. Reisman, supra. There defendant came to an American Air Lines freight office to claim two packages addressed to him and known by the surveilling police authorities to contain marijuana. Defendant identified the packages as his by pointing them out to the freight clerk despite the fact that they were too far away for him to have been able to read the shipping labels. He had on his person a check payable to the sender of the package. A strong odor of marijuana, unmistakable to a user, emanated from the package, and a search of defendant's car in the freight office parking lot revealed small amounts *116 of marijuana. See also, People v. Hankin and State v. Collins, supra (defendant had a slip of paper on his person with the name and address of the sender and in Hankin he also had a quantity of marijuana in his pocket); People v. Bennett, supra (the named addressee signed for the package by a fictitious name and gave the police a fictitious identity). Typical of the second of these fact patterns are Commonwealth v. Aguiar, supra (in the 20-or-30 minute interval between delivery and arrest, defendant had hidden the package in a closet, opened one corner of the wrapping and had read a letter which had been in the package although addressed to another); People v. Hesse, supra (prior to his arrest defendant was observed to have unwrapped the package while he was still in the postoffice, to have unmistakably seen a quantity of hashish therein contained, and to have rewrapped the package and left the postoffice with it); State v. Christel, supra (defendant, not the addressee of the package, signed for it and removed it from the apartment to which it was delivered although he did not reside there and the addressee, who did reside there, was not then at home); State v. Doerge, supra (defendant, in the half-hour interval between delivery and arrest, had hidden the package in the closet of an unoccupied bedroom in the house to which it was delivered); State v. Trimbell, supra (defendant picked up the package, intended for him but addressed to his sister at his sister's home, where he did not reside, and upon arrest admitted he was expecting a little "hash" from Nepal). Thus the only case, which as here, involved a controlled delivery followed by a delayed arrest and in which, during the interval between delivery and arrest, defendant did absolutely nothing to evince either knowledge of the contents of the package or intent to exercise control or dominion thereover, is Commonwealth v. Sterling, supra, where the conviction was reversed for insufficiency of evidence of knowing or intentional possession.
Considering the factual complex here, we have no doubt that had defendant not appeared momentarily outside *117 his apartment as a passenger in the cruising automobile on the evening following the day on which the controlled delivery was made, his acquittal would have been required beyond the slightest doubt. Without that circumstance, all that the State would have succeeded in proving was that the contraband was delivered by UPS in a sealed package to his home at a time when he was not even there; that his wife accepted the delivery, that he did not subsequently return home and that in his absence the package was untouched. Thus there would not only have been no proof that he knew what the package contained, but there would also have been no proof that he even knew a package had been delivered. In this posture the case would have been virtually indistinguishable from a conviction predicated simply upon police interception of the package without subsequent delivery to defendant at all.[3] Clearly, the evidence upon which the conviction rests must be of greater probative value than evidence of discovery of a controlled dangerous substance while the package is still in the carrier's hands. See, e.g., People v. Ackerman, supra, 274 N.E.2d at 127; People v. Patello, supra, 344 N.Y.S.2d at 35.
The question, then, is whether the fact that defendant did not enter his home during the entire weekend although he was in its immediate vicinity for about three minutes on Saturday evening permits the inference to be raised that he knew, beyond a reasonable doubt, that the contraband was in *118 his apartment and that he intended to exercise control and dominion over it. In our judgment, this circumstance does not constitute sufficient factual support for an inference that he knew the contraband was there. Certainly defendant's conduct was suspicious. But just as certainly, not every suspicion rises to the level of an inference. The distinction between these intellectual processes is clear. An inference is essentially a logical deduction made from a proved fact. State v. Corby, 28 N.J. 106, 114 (1958); Ferdinand v. Agricultural Ins. Co. v. Watertown, N.Y., 22 N.J. 482, 488 (1956). Since, however, we are dealing with questions of human behavior and not with matters susceptible of mathematical or scientific certainty, the inferred fact need not and indeed cannot be expected to be deduced as a matter of certainty. Rather, we make our deductions guided by common sense and common experience and relying thereon in evaluating the likelihood that the suggested inferred fact follows from the proved fact. We have rejected the notion that guilt may be based on culpable inferred facts only if the proved facts do not also support a set of inferred facts consistent with innocence. State v. Mayberry, 52 N.J. 413, 436-437 (1968), cert. den. 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1968). But obviously, before we even reach the issue involved when inferred facts consistent with innocence compete with inferred facts consistent with guilt, we must first be satisfied that the evidence which assertedly points to guilt is indeed evidence from which facts equatable with guilt can be fairly inferred. Unless that proposition is tenable, the evidence supports nothing more than speculation or conjecture which is insufficient to support a conviction. State v. DiRienzo, supra, 53 N.J. at 377.
We cannot here conclude that the fact that this defendant did not return home during the course of a weekend but that he passed his apartment once without entering it during that weekend permits the drawing of an inference, upon which a conviction could be based, that he knew during his absence that contraband was delivered there. We may *119 suspect that defendant was the intended recipient of the package, knew of its arrival and of its contents, and intended to exercise control and dominion thereover as soon as he was satisfied that it was safe to do so. We cannot, however, convict on that suspicion alone. In our judgment the proved facts are too insufficient, too equivocal and too ambiguous to justify the inferred fact which was necessary to sustain a verdict of guilt beyond a reasonable doubt.
The conviction is reversed.
NOTES
[1] Defendant's codefendant, his wife, was also convicted of both charges. Her custodial sentence having been suspended, she does not appeal. Defendant was sentenced to concurrent indeterminate terms in the Youth Correctional Institutional Complex.
[2] While the proofs offered by the defense are not material to the determination of the motion for judgment of acquittal, we note that the defense was predicated on the testimony of the codefendant, this defendant's wife, corroborated by the testimony of one of the occupants of the car which had been stopped by the traffic patrol on Saturday evening. The gist of that testimony was her denial of knowledge of the contents of the package, her report to her husband sometime during the weekend of its arrival and his disclaimer of knowledge concerning it and a recitation of their whereabouts during the weekend visiting with friends in various parts of the State. Her explanation of their presence outside their apartment on Saturday evening was that they, with their three friends who were in the car with them, were on their way to visit yet another friend who lived in that apartment complex and that they stopped outside their apartment to cursorily check on it because of a rash of thefts in the neighborhood. The surveillance van was also "checked out" for that reason since they did not recognize it and believed it might be connected with the robberies. They finally returned home from their weekend away on Monday afternoon.
[3] We regard it as probatively insignificant that the credentials by which defendant identified himself to the traffic patrol officer did not bear his current address. There is nothing in the State's case to suggest that he in any way attempted to conceal or withhold his actual identity, and there are innumerable innocent explanations for the carrying of credentials which might designate an address other than that at which the person currently resides. Nor do we regard as significant, in the context of the issue before us, the discovery in the apartment of minimum traces of marijuana. Evidence that an occupant of the apartment might have been a user of marijuana does not support the inference that the user was a dealer. See, e.g., Commonwealth v. Sterling, supra.