730 A.2d 700

**Reginald X. PEARSON**

v.

**STATE of Maryland.**

**No. 1503, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

June 1, 1999.

Thomas A. Pavlinic (Jonathan P. Kagan and Brassel & Baldwin, P.A., on the brief), Annapolis, for appellant.

Rachel Marblestone Kamins, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellee.

Argued before WENNER, EYLER and SONNER, JJ.

EYLER, Judge.

Appellant, Reginald X. Pearson, was convicted in the Circuit Court for Anne Arundel County (Joseph P. Manck, J.) of possession of marijuana with intent to distribute and possession of marijuana. After merging the two offenses, the circuit court sentenced appellant to three years imprisonment, all suspended, and three years supervised probation. Prior to trial, appellant filed a motion to suppress evidence obtained during a search of his apartment on the ground that the warrant was defective. Appellant appeals to this Court and asks (1) whether the evidence was sufficient to sustain his convictions, (2) whether the search warrant was defective, and (3) whether the court erred in failing to grant appellant an appropriate hearing. Finding no error, we affirm the judgment of the circuit court.

## Facts

### A. The Search Warrant

The warrant used in the search of appellant's apartment [1] (the "second warrant") was admitted during the suppression hearing along with an application and supporting affidavit. That warrant recited that on Saturday, February 28, 1998, the affiants, Detectives Daniel R. Rodriguez and Gregory E. Spriggs of the Anne Arundel County Police Department, were contacted by Detective Mark Price of the Maryland State Police Narcotics Task Force regarding a suspected drug parcel discovered by Detective Price during parcel interdiction at the Federal Express Warehouse in Beltsville, Maryland. Detective Price stated that he observed a parcel marked "Priority Saturday" and addressed to "H and H inc, 718 Lindengrove Place # 101, Odenton, MD 21113." The parcel had been mailed from Las Vegas, Nevada, and the postage had been paid in cash by the sender. Detective Price had enlisted the services of the Prince George's County Police Department and

---

1. Appellant had signed a lease, and moved into the apartment that was the object of the search, as the sole tenant on December 23, 1997.

a trained drug dog to check the package. The dog began biting and scratching at the package, signaling to Detective Price that the package contained a controlled dangerous substance. Detective Price then obtained a search and seizure warrant (the "first warrant") from a Prince George's County judge, conducted a field test of the contents of the package, and determined that the package contained approximately 60 pounds of marijuana.

In the affidavit, Detectives Rodriguez and Spriggs further stated that they met with Detective Price, took the package into custody, noticed that it was addressed to "H and H inc" at 718 Lindengrove Place #101, Odenton, MD 21113, and set up a controlled delivery of the package to that address. The detectives stated that the package remained in the custody of the Anne Arundel County Police until it was delivered and taken inside appellant's apartment.

### B. The Suppression Hearing and Trial

Detective Rodriguez testified at the suppression hearing that he and Detective Spriggs prepared a warrant application and an affidavit, and took the pre-typed application and affidavit to the residence of Judge Ronald A. Silkworth at approximately 3:30 p.m. on Saturday, February 28, 1998. The affidavit recited facts as they were expected to develop but that, in part, had not yet occurred. Specifically, when the detectives arrived at the judge's residence at 3:30 p.m. the delivery of the package to appellant's Odenton address had not yet taken place, although the detectives stated in the affidavit that it had been delivered. The detectives waited outside of the judge's residence until they received radio confirmation from another member of the Anne Arundel County Drug Interdiction Unit that the package had been accepted into appellant's apartment. Detectives Rodriguez and Spriggs then presented the application and affidavit to Judge Silkworth, and once the warrant was signed, they radioed that fact to the detectives outside of appellant's apartment, who immediately executed the warrant.

Detective Andrew Barnett of the Anne Arundel County Police Department testified at the suppression hearing that he delivered the box of marijuana to appellant's apartment. The box had a hole in one side, according to Detective Rodriguez, that was created by the drug dog. Detective Barnett wore a Federal Express uniform and drove what appeared to be a Federal Express van. The detective knocked, and appellant's roommate answered the door. Detective Barnett said he was from Federal Express and had a package for "H & H," and presented a sheet for signature. Appellant's roommate signed appellant's name on the sheet as appellant entered the room. Detective Barnett engaged in small talk with both men. At some point, Detective Barnett commented on the fact that the delivery was late. Once the delivery was complete, the detective drove away in the van and radioed to other officers on the scene a description of the apartment and the number of people inside.

Appellant testified that, after the package was delivered, he realized that it was delivered to him by mistake and went outside to try to catch the driver. He also stated that he tried to stop the driver of the van by following the van and making gestures toward it as it was leaving and that he attempted to call Federal Express on the phone. Detective Barnett testified that he did not see anyone come out of the apartment after he left it. According to an investigative report by Detective Todd Young, who was engaged in surveillance of appellant's apartment during the delivery, appellant came out of the apartment after Detective Barnett left and apparently tried to catch Detective Barnett as he drove away. At trial, Detective Young testified that he did not see appellant make gestures toward the van. In any event, appellant returned to his apartment without getting Detective Barnett's attention. Appellant's motion to suppress was denied.

The trial testimony was essentially the same as above. Several members of the Anne Arundel County Police Department, including Detectives Young and Barnett, searched the apartment. The package of marijuana was discovered unopened near the front door. In addition to the package, the

officers seized five boxes of plastic baggies, two boxes of plastic wrap, $190 cash, and a large digital scale that was recovered from beneath appellant's bed. Additionally, Detective Rodriguez testified at trial that marijuana is typically packaged for street use in plastic baggies, and Detective Young testified that, based on his training and experience, the type of scale that was discovered under appellant's bed was a type used to package large amounts of marijuana and that 60 pounds of marijuana indicated an intent to distribute. After a bench trial, the circuit court found appellant guilty.

## Discussion

### 1.

Appellant first contends that the evidence was insufficient to sustain his convictions.

In analyzing the sufficiency of the evidence admitted at a bench trial to sustain a defendant's convictions, "we 'review the case on both the law and the evidence,' but will not 'set aside the judgement ... on the evidence unless clearly erroneous,' giving due regard to the trial court's opportunity to judge the credibility of the witnesses." *Wilson v. State,* 319 Md. 530, 535, 573 A.2d 831 (1990) (quoting Rule 8–131(c)). We must view the evidence in the light most favorable to the State and determine "whether the evidence shows directly or supports a rational inference of the facts to be proved, from which the trier of fact could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged." *Wilson,* 319 Md. at 535–36, 573 A.2d 831. *See also Taylor v. State,* 346 Md. 452, 457, 697 A.2d 462 (1997); *Stouffer v. State,* 118 Md.App. 590, 605, 703 A.2d 861 (1997), *rev'd in part on other grounds,* 352 Md. 97, 721 A.2d 207 (1998).

Appellant argues that there was no evidence that he exercised dominion or control over the marijuana, as required in drug offenses based on possession, and that the circumstantial evidence is equally consistent with a hypothesis of innocence.

The circuit court found as follows:

I am not going to rehash all of the testimony in the case, because I already did that. What I am going to do is to—and what I did in there, in the room, was to make a list of things that I looked at in figuring out how I was going to come to a verdict in this case.

On the State's side we have an inordinate amount of marijuana that is hit upon by a dog, it is actually bit into. The box is repaired as best it can. It comes to the Defendant's apartment, some four or five hours—maybe three and one-half to four hours after the time when it should have been delivered. Actually it is longer than that.

It is delivered to the Defendant's apartment, not to [appellant's roommate's] apartment, but to the Defendant's apartment. There is testimony that the only person on the lease is the Defendant.

The box is delivered by an undercover police officer, [appellant's roommate] chats with the undercover police officer as does the Defendant who leans in—I am not exactly sure what that means when the police officer said "leans in", but leans in and exchanges some pleasantries with the Federal Express undercover agent at that point.

Why nothing is said at that point as to "Wait a minute, what is this H & H Corporation? This isn't my box. Why is it here?" I don't know, but nothing is said. The box then is inside right by the door. Both [appellant's roommate] and Mr. Pearson are presumably there, that is what the testimony was.

When the search warrant goes down the police find large baggies, an inordinate amount of large baggies which the Court can only surmise are being used to package. And, as the police officer says, large quantities of marijuana. Certainly, 50 or 60 pounds is a large quantity of marijuana, even when it is split up.

That goes for the Saran wrap as well. Why is there so much Saran wrap in this apartment, other than to wrap the marijuana. The Defendant—also in his room is found the scale which is said, and it is in evidence, that he found it on

entering his apartment. The State has a witness that says look that apartment was not furnished, there was nothing in the apartment, albeit at times the doors were left unlocked for the workmen to go in.

The Defendant does not state anything to the Federal Express driver at the time of the delivery, but within a minute or two does run outside to get—appears to attempt to get the attention of the Federal Express driver. The Federal Express driver doesn't see him, but I think it was Detective Young who testified that the man did appear to be attempting to get to the Federal Express driver.

With no success he goes back in the house and comes back out with a telephone. I guess if I have to point—with circumstantial evidence it builds on its self, and it builds and it builds.

It seems to me that the circumstantial evidence of the amount, of the weight of the marijuana; the box with only the Defendant's address on it; the Defendant not saying anything to the driver when the box is delivered; the Defendant having a scale which is a larger scale used, which seems to feed into the issue of the distribution of marijuana; the large amount of baggies that are used in the marijuana sale and division of; and the Saran wrap as well.

Realizing, circumstantially, that there was a bite out of the box and then the charging out of the apartment to find the driver just leads me to candidly—the inescapable conclusion that the Defendant is guilty as charged, beyond a reasonable doubt.

I am going to enter and find him guilty to the charge of possession. The Court does find that this amount of marijuana clearly was not for personal use and is clearly for distribution.

■■ "Knowledge" is an element of the offense of possession of a controlled dangerous substance. *Dawkins v. State,* 313 Md. 638, 651, 547 A.2d 1041 (1988). To prove possession of a controlled substance, the State must show in part that the accused knew "of both the presence and the general character

or illicit nature of the substance." *Dawkins,* 313 Md. at 651, 547 A.2d 1041. This knowledge, of course, may be proven through circumstantial evidence. *See Taylor,* 346 Md. at 458, 697 A.2d 462; *Wilson,* 319 Md. at 536, 573 A.2d 831; *Dawkins,* 313 Md. at 651, 547 A.2d 1041. Further, a conviction may be based on circumstantial evidence alone but "cannot be sustained on proof amounting only to strong suspicion or mere probability." *Taylor,* 346 Md. at 458, 697 A.2d 462.

The parties to the present case have not provided this Court with a published opinion of a Maryland appellate court that is instructive on the precise issue for decision here. In *McDonald v. State,* 347 Md. 452, 701 A.2d 675 (1997), the Court of Appeals considered whether the evidence presented in the trial of that case was sufficient to sustain the defendant's convictions for possession of a controlled dangerous substance and for simple possession. *McDonald* involved a controlled delivery of a package containing marijuana to a defendant, followed closely by an entry and search of the premises by police. *McDonald,* 347 Md. at 460, 474–75, 701 A.2d 675. In *McDonald,* however, the defendant had personally signed for the package and was found standing over the exposed package of marijuana when the house was searched thirty minutes after the delivery. *Id.* at 474–75, 701 A.2d 675. These facts, although apparently central to the decision of the *McDonald* majority to affirm the convictions in that case, serve to distinguish *McDonald* from the case at bar. The trial testimony in the present case revealed that appellant did not sign for the package and that, when the apartment was searched, the package remained unopened near the front door. While the Court in *McDonald* was able to affirm the sufficiency determination with little analysis of the knowledge requirement, we are presented with a closer set of facts in the instant case.

Courts of other states generally have concluded that the mere fact that a package containing a controlled substance is received in a controlled delivery or through the mail is insufficient evidence of knowledge of the illicit contents of the

package to sustain a conviction for possession. *See Walker v. State,* 356 So.2d 674, 676 (Ala.Crim.App.1977); *People v. Larsen,* 180 Colo. 140, 503 P.2d 343, 345 (1972) (en banc); *State v. Parent,* 8 Conn.App. 469, 513 A.2d 725, 728 (1986); *State v. Gomez,* 126 Idaho 700, 889 P.2d 729, 736 (App.1994); *People v. Ackerman,* 2 Ill.App.3d 903, 274 N.E.2d 125, 127 (1971); *Commonwealth v. Sheline,* 391 Mass. 279, 461 N.E.2d 1197, 1202 (1984); *Commonwealth v. Aguiar,* 370 Mass. 490, 350 N.E.2d 436, 442 (1976); *State v. Richards,* 155 N.J.Super. 106, 382 A.2d 407, 411 (App.Div.1978); *Commonwealth v. Rambo,* 488 Pa. 334, 412 A.2d 535, 537–38 (1980); *Commonwealth v. Sterling,* 241 Pa.Super. 411, 361 A.2d 799, 802 (1976); *Barber v. State,* 757 S.W.2d 83, 86 (Tex.App.1988, pet.ref'd). Where knowledge is an element of the crime of possession, additional circumstantial evidence of knowledge is required. *Compare People v. Larsen,* 180 Colo. 140, 503 P.2d 343, 344–45 (1972) (en banc) (evidence that defendant possessed unopened package of marijuana for brief period of time, and that package was not addressed to or opened by her, held insufficient as a matter of law) *with People v. Hankin,* 179 Colo. 70, 498 P.2d 1116, 1118 (1972) (en banc) (evidence that defendant had piece of paper in his pocket with identical name and address of sender as printed on package of narcotics, and that defendant had flakes of marijuana in his pocket, held sufficient to sustain conviction for possession of narcotics); *compare People v. Ackerman,* 2 Ill.App.3d 903, 274 N.E.2d 125, 126–27 (1971) (evidence that defendant accepted package containing LSD that was addressed to another, but sent "c/o" the defendant, and that defendant placed unopened package under his arm and walked toward an elevator, held insufficient evidence of knowledge of the contents of the package to sustain defendant's conviction for possession) *with People v. Hesse,* 18 Ill.App.3d 669, 310 N.E.2d 199, 200–01 (1974) (evidence that defendant received package containing hashish and that, when advised in the post office that he should check the contents because the box was damaged, defendant opened the package wherein the hashish was clearly exposed, inspected the contents, and then returned to the postal counter to sign a receipt

card, held sufficient evidence of knowledge of the contents to support the jury verdict against the defendant).

In *State v. Richards*, 155 N.J.Super. 106, 382 A.2d 407 (App.Div.1978), the intermediate appellate court of New Jersey considered a conviction for possession of marijuana and possession of the same with an intent to distribute. *Richards*, 382 A.2d at 408. The convictions were based on evidence that a controlled delivery of a package containing approximately 28 pounds of marijuana was made to the defendant at the return address listed on the package. *Id.* at 409. The shipping label listed defendant's name as the sender. *Id.* An undercover detective dressed as a UPS employee delivered the package to the defendant's apartment on a Friday afternoon, and the defendant's wife signed for the package, which the detective placed on the floor near the front door. *Id.* Shortly thereafter, the defendant's wife left the apartment, which was under close surveillance. *Id.* On Saturday evening, an automobile occupied by five people, including appellant and his wife, briefly stopped in front of the apartment and then drove forward to a surveillance van that was at that time unoccupied. *Id.* A male passenger other than the defendant got out of the automobile and walked around the van, looking inside. *Id.* Thereafter, the automobile exited the community without anyone entering the apartment. *Id.* A search warrant for the apartment was obtained on Monday morning, and a search of the apartment revealed that the package of marijuana remained inside the front door, apparently unopened. *Id.* at 410. Also inside the apartment, detectives recovered three pipes and a roach clip, and subsequent laboratory analysis revealed trace amounts of marijuana in two of the pipes. *Id.*

The intermediate New Jersey appellate court surveyed analogous cases from other jurisdictions and concluded that, in similar cases in which courts concluded that there was legally sufficient evidence to convict, the fact patterns involved generally fell within two categories:

> Either the arrest, which was virtually simultaneous with the delivery, was predicated not only on the delivery itself but on a totality of circumstances surrounding the delivery

which implied defendant's knowledge of the contents of the package and intent to exercise dominion over it, or the arrest was made some time after the delivery had been completed and defendant, in the interval between the delivery and the arrest, took some affirmative action *vis-a-vis* the package from which these inferences of knowledge and dominion could be drawn.

*Id.* at 411. The court likened the evidence before it to the second factual scenario and concluded that factually the closest preceding case to the case before that court was *Commonwealth v. Sterling, supra,* in which a conviction for possession was reversed due to insufficient evidence of knowledge. *Id.* at 412. The *Richards* court concluded that, while the defendant's conduct in stopping in front of the apartment briefly during the weekend without entering the apartment was "suspicious," that conduct was too "equivocal" and "ambiguous" to permit the jury verdict to stand. *Id.* at 413.

■ The circumstantial evidence in the present case is not so equivocal or ambiguous. In stating its findings, the trial court repeatedly referred to the large amount of marijuana contained in the package. Such a large and valuable amount of contraband circumstantially supports an inference that the sender would be very careful to place the correct address on the package to avoid a misdelivery. *See Lockhart v. State,* 715 So.2d 895, 900 (Ala.Crim.App.1997). The "inordinate amount of large baggies" and ample "Saran Wrap" found in appellant's apartment and the large scale found in appellant's bedroom provide evidence from which the trial court could infer preparation by appellant to receive a large quantity of marijuana and an ability to distribute it. Finally, viewing the evidence and permissible inferences in the State's favor, as we must, the trial court could properly conclude that, although appellant did not mention to Detective Barnett that there was no "H and H inc" at the address when the package was delivered, thereafter appellant tried to stop Detective Barnett and return the package only after discovering that it had been bitten open and resealed.

We hold that this evidence was sufficient to sustain appellant's convictions.

### 2.

Appellant argues that the application for the second search warrant violated Maryland Code (1957, 1996 Repl.Vol., 1998 Cum.Supp.), article 27 § 551(a), and that consequently, the warrant was invalid and the motion to suppress all items discovered in the search of appellant's apartment should have been granted. Article 27, § 551(a) provides that an application for a warrant must be "accompanied by an affidavit or affidavits containing facts within the personal knowledge of the affiant or affiants." Appellant argues that Detectives Rodriguez and Spriggs did not have personal knowledge of the events in Beltsville, where the package was initially seized, or of the activities at appellant's apartment immediately before and after the warrant was signed. Appellant also argues that Detective Price's affidavit and the warrant issued in Prince George's County should have been attached to the application for warrant made in Anne Arundel County. Additionally, appellant argues that the suppression court did not make findings of fact as required by law, citing *Simpson v. State,* 121 Md.App. 263, 276, 708 A.2d 1126 (1998).

Appellant presents the above arguments as pure violations of article 27, § 551(a). Appellant does not argue that these alleged defects violated a constitutional right to which he was entitled or that the alleged defects undermined the probable cause determination of the issuing judge. As a remedy for the alleged defects, appellant states that a violation of article 27, § 551(a) renders a search warrant "invalid."

We conclude that the requirement in article 27, § 551(a), that an affidavit be based on the affiant's "personal knowledge," permits statements of hearsay by the affiant that are otherwise constitutional, and that, based on this conclusion, the statute was not violated. We note preliminarily that it is beyond dispute that a constitutionally adequate search warrant may be based on hearsay, so long as the issuing judge

or magistrate is confident that probable cause for the search exists on the face of the affidavit under the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This Court has concluded that the reliability in an affidavit of hearsay information that was obtained from other members of an investigating police team who were named in the affidavit was "too plain to require discussion." *Grimm v. State,* 6 Md.App. 321, 328, 251 A.2d 230 (1969). We now hold that the requirement of personal knowledge contained in article 27, § 551(a) does not create a separate, more exacting statutory standard by which search warrant affidavits are to be measured.

■ In the alternative, we conclude that the remedy requested by appellant is unavailable to him under the statute for the type of violation alleged. As Judge Moylan, writing for this Court, suggested in *In re Special Investigation No. 228,* 54 Md.App. 149, 165–67, 458 A.2d 820 (1983), the remedies of § 551 are confined to the restoration of property seized under a search warrant. There is no sanction of exclusion of evidence for a violation of § 551, *see Chu v. Anne Arundel County,* 311 Md. 673, 686, 537 A.2d 250 (1988), and such a sanction would be proper only when a violation of the statute coincidentally is also a violation of the Constitution. *In re Special Investigation No. 228,* 54 Md.App. at 169, 176–77, 458 A.2d 820 (1983). The requirement of personal knowledge in § 551(a) does not correspond to a remedy under the statute. *See In re Special Investigation No. 228,* 54 Md.App. at 168–69, 458 A.2d 820. Thus, if we were to agree with appellant that § 551(a) was violated in this case because the affidavit contained matters outside of the personal knowledge of the affiants, we would, without a corresponding challenge to the probable cause for issuing the warrant, conclude that appellant is left with no remedy.

Finally, we disagree with appellant's argument that reversal is mandated because the suppression court failed to make sufficient factual findings in denying the motion to suppress. We conclude that the relevant facts underlying appellant's

motion were not in dispute and that the suppression court decided a pure issue of law: does article 27, § 551(a) require that an affiant personally sense all matters contained in the affidavit?

Rule 4–252(g), regarding the determination of pretrial motions, provides in part: "If factual issues are involved in determining the motion, the court shall state its findings on the record." Appellant acknowledges that express findings of fact by a court are not necessary when there is "no dispute regarding the relevant facts," or when the "resolution of an essential fact is implicit in its ruling." *Simpson v. State,* 121 Md.App. 263, 276, 708 A.2d 1126 (1998). For relevant facts in dispute, appellant poses the issues he raised regarding article 27, § 551(a) and "the inferences which had to be drawn from Mr. Pearson's running out into the parking lot."

The facts surrounding appellant's arguments at the beginning of Part 2, above, were not in dispute. The State did not contend that Detectives Rodriguez and Spriggs personally observed the occurrences at Beltsville or all of the occurrences at appellant's apartment. The challenge to the affidavit focused on the legal consequences of the fact that the detectives had included in the affidavit information gained from other detectives. The suppression court ruled that this sort of information was contemplated by the term "personal knowledge" in article 27, § 551(a). Further, the facts surrounding appellant's attempt to stop Detective Barnett as he drove away were irrelevant to the meaning of "personal knowledge." The suppression court properly decided this issue without reference to any dispute over appellant's actions.

### 3.

Appellant argues alternatively that the circuit court failed to grant a hearing to which he was entitled, pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Appellant contends that information was not given to Judge Silkworth which should have been given to him prior to issuance of the warrant, namely, the facts supporting the

inference that appellant tried to stop Detective Barnett as the detective drove away from appellant's apartment. Appellant argues, relying on *Franks, McDonald v. State,* 347 Md. 452, 701 A.2d 675 (1997), *Emory v. State,* 101 Md.App. 585, 647 A.2d 1243 (1994), and *Yeagy v. State,* 63 Md.App. 1, 491 A.2d 1199 (1985), that if an issuing judge is misled by information contained in or omitted from an affidavit, that the affiant knew or should have known was false, suppression is appropriate.

 Officer Young, conducting surveillance of appellant's apartment, testified that, after delivery of the package and before execution of the warrant, a male came out of the apartment. Appellant argues that Detective Young should have relayed that information to Detectives Rodriguez and Spriggs. Detective Rodriguez acknowledged that, if he had known this information, he would have asked questions as to the circumstances of the person's exit to determine if there was anything relevant to include in the application. On appeal, appellant is arguing that he is entitled to a *Franks* hearing because of the omission of the information described above. The State asserts that appellant's argument was not preserved and that, based on the arguments made below, the circuit court actually held a hearing, which was effectively a *Franks* hearing, but in which appellant failed to call Detective Young to testify.

In *Franks,* the Supreme Court was faced "with only the question of the integrity of the affiant's representations as to his own activities." 438 U.S. at 170, 98 S.Ct. 2674. Accordingly, the Court announced its decision as follows:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they

should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. *The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant,* not of any nongovernmental informant.[2] Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Id.* at 171–72, 98 S.Ct. 2674 (emphasis added). Appellant does not provide authority for the proposition that a sufficient allegation under *Franks* may touch upon the actions of non-affiants to the warrant affidavit. In addition to the *Franks* opinion itself, there is authority to the contrary. *See United States v. Hartsell,* 127 F.3d 343, 353 n. 5 (4th Cir.1997); *Simmons v. Poe,* 47 F.3d 1370, 1383–84 (4th Cir.1995); *Emory v. State,* 101 Md.App. 585, 632, 647 A.2d 1243 (1994). We hold that, under *Franks,* appellant was limited in this case to challenging the statements of the affiants, Detectives Rodriguez and Spriggs.

Appellant did not contend at the hearing below that either Detective Rodriguez or Detective Spriggs deliberately falsified the affidavit in omitting the proffered information or acted with a reckless disregard for the truth. Appellant's allegations touch only upon the asserted failures of Detective Young. Without an allegation either of deliberate falsity or of recklessness touching upon the affiants, appellant cannot reach the required steps, not argued in any event, as to the materiality of the omission and whether the warrant affidavit would stand had the omission not occurred. Assuming appellant's argu-

---

**2.** The Court at this time was cognizant of "the difficult question whether a reviewing court must ever require the revelation of the identity of an informant once a substantial preliminary showing of falsity has been made." *Franks,* 438 U.S. at 170, 98 S.Ct. 2674.

ment is preserved, appellant's allegations were insufficient to raise a *Franks* issue, and his request for a further hearing under *Franks* was properly denied.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**