# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3958-22

O.C.,[1]

    Plaintiff-Respondent,

v.

A.G.,

    Defendant-Appellant.

_____

Submitted December 3, 2024 – Decided December 10, 2024

Before Judges Firko and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-1466-23.

Schumann Hanlon Margulies LLC, attorneys for appellant (Nirmalan Nagulendran, on the briefs).

Dughi, Hewitt & Domalewski, attorneys for respondent (Kristin M. Capalbo and Cara N. Anan, on the brief).

PER CURIAM

---

[1] We use initials and a pseudonym to protect the confidentiality of the parties. R. 1:38-3(d)(10).

Defendant A.G. appeals from a July 12, 2023 final restraining order (FRO) entered in favor of his former paramour, plaintiff O.C., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, based on the predicate acts of harassment, N.J.S.A. 2C:33-4(a)(b) and (c), and contempt of a restraining order, N.J.S.A. 2C:25-19(a)(17).

On appeal, defendant contends there is insufficient evidence supporting the judge's finding he committed the predicate acts of harassment and contempt of a restraining order, and therefore, the judge erred in concluding an FRO is necessary to protect plaintiff from future acts of domestic violence. We affirm.

I.

The facts were established at the three-day non-consecutive bench trial conducted in March, May, and July 2023. Represented by counsel, plaintiff testified on her own behalf and introduced exhibits and video footage into evidence. Plaintiff called L.R., her significant other, V.B., her friend, and Y.A., her mother, as witnesses. Defendant was also represented by counsel, testified on his own behalf, and moved exhibits and video footage into evidence. Defendant did not call any witnesses on his behalf to testify.

Plaintiff and defendant dated for two years from 2015 until 2017. They have a child in common, Alan, who was six years old at the time of trial. The

record shows that on May 30, 2018, the parties entered into a custody order under a non-dissolution docket number[2] providing for joint legal and equal residential custody of Alan.

Plaintiff testified about an incident which occurred in spring 2017. The parties were still living together and got into a heated argument. Defendant threw a speaker across the room in Alan's direction. When plaintiff tried to see if Alan was harmed, defendant pushed her in the other direction, causing her to fall into a shoe rack, resulting in scratches and a bruise on her back. Plaintiff testified that the parties got into an argument regarding placement of Alan in his car seat on August 25, 2017, which defendant recorded.

On July 28, 2018, plaintiff explained she had to call the police for the first time during a custody exchange. Plaintiff attempted to give defendant frozen breast milk in a plastic bag for Alan, but the bag fell on the floor. Defendant pushed the bag of breast milk up and around to defendant, and threw it at the back of her neck and head, which she described as feeling like being hit with two bricks. Plaintiff testified she cried and called her mother because she did not feel safe.

---

[2]  FD-09-1396-18.

On September 8, 2020, plaintiff testified defendant flipped his middle finger in front of her camera phone during a custody exchange before leaving her residence. On January 21, 2021, plaintiff testified she dropped off Alan from a custody exchange and defendant stuck his tongue out and flipped his middle finger to her, which she recorded.

Plaintiff testified about similar instances where defendant taunted her during custody exchanges. While pregnant with another child, plaintiff testified that defendant pulled out his phone and placed it in front of plaintiff's camera phone. Plaintiff stated defendant prevented the custody exchange by not letting Alan out of the car.

Plaintiff testified about a June 2, 2021, incident involving a custody exchange. Plaintiff was heavily pregnant at the time. Plaintiff testified that defendant was leading Alan across the street to the designated meeting place – plaintiff's older son's school – when defendant came close and pushed her in the stomach using Alan's hand. Plaintiff recorded the incident. She testified defendant's actions were "scary," unnecessary, and made her feel unsafe.

On June 23, 2021, plaintiff testified that during another custody exchange in front of Alan, defendant put his phone in her face and made a "facial grimace"

4

to "intimidate" and "scare" her. Defendant stated "you want some more of that" to plaintiff according to her testimony.

On November 14, 2022, plaintiff testified that she arrived at defendant's residence for a custody exchange and rang the doorbell. Defendant opened the door aggressively and told plaintiff that he was not going to return Alan and shut the door in her face. Plaintiff contacted the police for assistance. Prior to the police officer's arrival, defendant exited his residence, charged at plaintiff, and screamed "get off my f***ing property." Plaintiff stated that she tried to get out of defendant's way, "leaning backwards," and "stumbling out of the way" while feeling very scared. L.R. was present at this incident.

Plaintiff stated she underwent domestic violence therapy for five years before filing the complaint. Plaintiff stated that defendant sent her harassing emails and left messages between February 2021 and November 2022. By way of example, plaintiff testified that some of the text messages mocked her intelligence, stating she "screwed up the drop off because [her] brain is lacking brain functions." On March 30, 2021, plaintiff wrote to defendant "[y]our anger needs to stop, it scares me and Alan with every exchange." Defendant responded "[m]y anger [is] spent on real human beings with a brain. You're not that." On

A-3958-22

July 29, 2021, plaintiff testified about a text message from defendant stating, "your brain is not fully functioning. I'd get it checked out."

On September 15, 2021, plaintiff testified that defendant texted her, "[y]ou are a bad parent, and this is a fact" and called her a "lying robot." A month later, plaintiff stated defendant called her a "pathological liar." Plaintiff responded to defendant "get some help for your anger it's affecting our son" and to "stop harassing [her] immediately." On March 4, 2022, defendant told plaintiff "[y]ou will look like a[n] evil robot in court" and "[y]ou need to go to jail for this" and "for child abuse."

L.R. testified about a November 14, 2022, incident involving a custody exchange of Alan between plaintiff and defendant. L.R. stated he was present, along with the then one-year old infant shared in common with defendant, at defendant's residence for the custody exchange of Alan. L.R. stated defendant came out the door and charged at plaintiff, approached her with his hands behind his back, and used his chest to push plaintiff to the back of the fence. In response, L.R. testified that he jumped out of the car and said "whoa" several times.

L.R. also testified about an incident that occurred in winter 2021 during a custody exchange of Alan. Defendant arrived late and vocalized his displeasure

6

of Alan not being dressed in boots and a jacket. According to L.R., defendant raised his voice to the point that L.R. had to intervene and asked defendant to step outside. Guests were present at the time in the living room.

V.B. testified about the same incident as she was one of the guests. V.B. explained that defendant became agitated because Alan was undressed and started acting aggressively towards plaintiff. V.B. added that she was afraid of defendant at that moment, and his behavior was very erratic, frustrated, and near violent.

Y.A. testified about a November 30, 2022, incident that occurred at her oldest grandson's school. Plaintiff was in attendance. Y.A. testified Alan and defendant arrived at the school and a dispute arose between the parties regarding whose parenting day it was. Y.A. described Alan's body language as unusual. According to Y.A., Alan did not greet anyone, was "scared to death," and was being held by the shoulder. Y.A. stated plaintiff was intimidated by defendant's behavior.

On December 1, 2022, plaintiff obtained a temporary restraining order (TRO) against defendant, which was served upon him. On December 21, 2022, defendant sent an email to his attorney and carbon copied plaintiff, resulting in

A-3958-22

her amending the complaint and TRO to include the predicate act of contempt of a restraining order.

Defendant stated that on November 14, 2022, the parties had a disagreement about when Alan would be returned to plaintiff. Defendant claimed plaintiff came to his home at approximately 10:00 a.m., knocked loudly on the door and windows of his basement apartment, which caused Alan to become "visibly shaken and disturbed," and "was not doing well." Defendant countered he wanted to "protect" Alan and have plaintiff leave but did not try to scare or upset her.

Regarding the November 30, 2022 incident, defendant testified that plaintiff used her phone to videotape him while exchanging Alan at a local school. Defendant objected to the videotaping but then began videotaping plaintiff, who in turn tried to record him.

Defendant testified that on December 21, 2022, he sent his attorney an email which was carbon or "courtesy copied" to plaintiff. Defendant stated plaintiff withheld Alan during a vacation, as she had done before, and defendant sought make-up parenting time through his attorney. Defendant testified that he did not address plaintiff directly or refer to her in a disparaging fashion in his email. He also did not physically threaten her.

8

Defendant acknowledged putting up his middle finger and sticking out his tongue in some of the videos but indicated none of the videos showed physical violence or threats of physical violence. Defendant testified that, on one occasion, plaintiff purposefully withheld Alan for four hours for no "reason whatsoever" and threated to "move the child to Pennsylvania." Defendant decided to keep Alan for an additional four hours on November 14, 2023, because plaintiff kept Alan for the same amount of time unilaterally.

Defendant testified that he eventually asked plaintiff to cease videotaping him to no avail, which led to his decision to videotape the parenting time exchanges. Defendant believed plaintiff's videotaping was illegal, but later realized he was mistaken.

Following the testimony and at the close of the evidence, the judge placed his decision on the record. The judge found plaintiff and her witnesses were "credible," noting plaintiff "gave plausible versions of events," which were "logical." In contrast, the judge found defendant was "not a credible witness" and that "his testimony vacillated many times with regard to many things," especially with regard to his version of events that occurred in 2017. The judge reasoned that defendant did not provide a "logical, plausible, and reasonable explanation" in response to plaintiff's testimony.

9

The judge then applied the two-prong test under <u>Silver v. Silver</u>, 387 N.J. Super. 112, 125-27 (App. Div. 2006), and concluded plaintiff needed the protection of an FRO.  The judge highlighted that the predicate acts of harassment—an offense that involves repeated acts committed with the purpose to alarm and seriously annoy another individual—and knowingly violating the TRO—resulting in contempt of a restraining order—warrants the issuance of an FRO.

This appeal followed.  On September 21, 2023, the judge submitted and amplification of trial decision pursuant to <u>Rule</u> 2:5-1(d).[3]  The judge pointed out that he mistakenly referenced subsection (a) of the harassment statute in the original decision instead of subsection (c).  The judge highlighted that the defendant was "legally permitted" to record the parties' interactions but "is not permitted to repeatedly engage in harassing conduct," and "[h]e did so to annoy plaintiff."

The judge stressed "the record is replete" with defendant's repeated acts "to alarm and annoy plaintiff during parenting time exchanges" in violation of

---

[3]  Under <u>Rule</u> 2:5-1(d), "[w]ithin [thirty] days of receipt of the notice of appeal, or an order in lieu of notice of appeal as described in paragraph (f)(4) of this rule, the trial judge. . . may file and send to the clerk of the appellate court and the parties an amplification of a prior written or oral statement, opinion or memorandum."

N.J.S.A. 2C:33-4(b) and (c). In addition, the judge emphasized that defendant "knowingly and purposefully" carbon copied plaintiff on an email to her attorney after being served with the TRO. Since defendant "directly violated the terms of the TRO," the judge concluded that the "single communication" was made to annoy and alarm plaintiff and regarded defendant's explanation as "unpersuasive." Further, the judge noted it is "both jarring and alarming to be contacted by the alleged abuser while restraints are in place." The judge reiterated plaintiff's need for an FRO "to prevent further abuse."

Defendant appeals, contending the judge erred in finding plaintiff's and the witness's testimony credible. Defendant also argues plaintiff did not establish the predicate acts of harassment and contempt of a restraining order or the need for an FRO to protect her from immediate danger of harm and to prevent further abuse. We disagree.

II.

Generally, "findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between

couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). "[D]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).

We will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions and will review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

The purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." G.M. v. C.V., 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); see also N.J.S.A. 2C:25-18. Consequently, "[o]ur law is particularly solicitous of victims of domestic violence," J.D., 207 N.J. at 473 (alteration in original) (quoting State v. Hoffman, 149 N.J. 564, 584 (1997)),

and courts will "liberally construe[] [the PDVA] to achieve its salutary purposes," Cesare, 154 N.J. at 400.

When determining whether to grant an FRO pursuant to the PDVA, the judge must make two determinations. See Silver, 387 N.J. Super. at 125-27. Under the first Silver prong, "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125 (citing N.J.S.A. 2C:25-29(a)).

If the court finds the defendant committed a predicate act of domestic violence, then the second inquiry "is whether the court should enter a restraining order that provides protection for the victim." Id. at 126. While the second prong inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127.

"[T]he Legislature did not intend that the commission of one of the enumerated predicate acts of domestic violence automatically mandates the entry of a domestic violence restraining order." Silver, 387 N.J. Super at 126-

127. The factors which the court should consider include, but are not limited to:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; and
>
> (6) The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a).]

Although the court is not required to incorporate all of these factors in its findings, "the [PDVA] does require that 'acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties.'" Cesare, 154 N.J. at 402 (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)). Whether a restraining order should be issued depends on the seriousness of the predicate offense, on "the previous history of domestic violence between the plaintiff and defendant including

14

previous threats, harassment, and physical abuse," and on "whether immediate danger to the person or property is present." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995).

The court must also exercise care to "distinguish between ordinary disputes and disagreements between family members and those acts that cross the line into domestic violence." R.G. v. R.G., 449 N.J. Super. 208, 225 (App. Div. 2017). The PDVA is not intended to encompass "ordinary domestic contretemps." Corrente, 281 N.J. Super. at 250 (emphasis added). Rather, "the [PDVA] is intended to assist those who are truly the victims of domestic violence." Silver, 387 N.J. Super. at 124 (quoting Kamen v. Egan, 322 N.J. Super. 222, 229 (App. Div. 1999)). The second Silver prong "requires the conduct must be imbued by a desire to abuse or control the victim." R.G., 449 N.J. Super. at 228 (citing Silver, 387 N.J. Super. at 126-27).

A.

Defendant argues the judge misapplied the law in determining that he committed the predicate act of harassment, citing to J.D., 207 N.J. at 487. Defendant contends that a finding of harassment "must be supported by some evidence that the actor's conscious object was to alarm or annoy," and such evidence was not presented at trial. Plaintiff counters that defendant's repeated

acts of alarming conduct were committed with the purpose to alarm and seriously annoy her, and therefore constituted harassment, citing Peranio, 280 N.J. Super, at 55.

N.J.S.A. 2C:33-4 defines harassment as:

> Except as provided in subsection e., a person commits a petty disorderly persons offense if, with purpose to harass another, he:
>
> a. Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> A communication under subsection a. may be deemed to have been made either at the place where it originated or at the place where it was received.

A finding of harassment requires proof of an intent or purpose to harass. State v. Hoffman, 149 N.J. 564, 576-77 (1997). A purpose to harass may be inferred from the evidence. State v. McDougald, 120 N.J. 523, 566-67 (1990). An assertion by a plaintiff that he or she felt harassed is a subjective belief and insufficient to prove a purpose or intent to harass. J.D., 207 N.J. at 484. A

16

violation of N.J.S.A. 2C:33-4(c), by contrast, requires proof of a course of conduct. Id. at 478. Common sense and experience may also inform a determination or finding of purpose. Hoffman, 149 N.J. at 577 (citing State v. Richards, 155 N.J. Super. 106, 118 (App. Div. 1978)). "[T]he decision about whether a particular series of events rises to the level of harassment or not is fact-sensitive." J.D., 207 N.J. at 484.

Here, there is substantial evidence in the record that shows defendant committed the predicate act of harassment, specifically, under subsection (c). Defendant maintains that his intent was not to annoy or alarm plaintiff, but simply to obtain evidence against her or have her stop recording him. Defendant cites to J.D., where our Supreme Court reversed a trial court's finding that defendant committed a predicate act of harassment by taking photographs of plaintiff's home; and found that defendant was not attempting to annoy or alarm plaintiff but instead use the photos in a custody proceeding. J.D., 207 N.J. at 464.

Here, as the judge noted in his oral opinion and amplification, defendant invaded plaintiff's personal space and placed his cell phone very close to plaintiff's face. The judge found that prior to the November 30 incident, defendant engaged in similar behavior in the April 7, June 23, and July 13

17

incidents, which supported the predicate acts of harassment. On November 30, 2022, the judge found defendant again stuck his phone in plaintiff's face after being asked not to. The judge credited plaintiff's testimony that defendant was "yelling something in an aggressive way and he was interfering with [her] personal space" "[l]iterally, like videotaping [her] nostrils."

Moreover, the judge determined that defendant acted with the clear "purpose to alarm and seriously annoy plaintiff" and "his behavior is also alarming." The judge concluded that:

> Based on the history of violence, it is objectively intimidating and frightening for plaintiff to be subjected to defendant's behavior during parenting time exchanges that must occur. Moreover, while the language he used during some of these interactions alone would not constitute a violation of the harassment statute, when combined with his acts, the court finds that it was done to annoy and alarm plaintiff.

The record supports the judge's finding. Thus, the Supreme Court's holding in J.D. is distinguishable because in the matter under review, plaintiff presented credible substantial evidence that defendant annoyed and alarmed her with express purpose unrelated to a legitimate reason, as in J.D.

Applying these principles, we conclude there is no basis to disturb the judge's factual findings or legal conclusions. The judge had the opportunity to hear and consider the testimony of the parties, the witnesses, and evidence and

A-3958-22

assess the credibility based on believability and demeanor. His factual findings are supported by substantial credible evidence, and those facts were correctly applied to the law.

The judge found plaintiff's testimony was corroborated by the videos and text messages between the parties to establish plaintiff's version of events. The judge found she met her burden of proof to establish defendant committed the predicate acts of harassment and contempt of a restraining order. Defendant points to no evidence in the record that undermines the judge's findings. We discern no error.

The judge evaluated defendant's conduct "in light of the previous history of violence between the parties." Silver, 387 N.J. Super. at 125-26 (quoting Peranio, 280 N.J. Super. at 54). Plaintiff testified defendant harassed her in the past, and he did not rebut her testimony on this issue. The judge found plaintiff and her witnesses were credible. These findings are sufficiently supported in the record.

### B.

Next, defendant asserts the judge erred in finding he committed the predicate act of contempt for violating the TRO by carbon copying plaintiff in an email to his attorney.

Contempt of a restraining order issue under the PDVA is a predicate act. N.J.S.A. 2C:25-19(a)(17). An act of "contempt" under N.J.S.A. 2C:25-19(a)(17) occurs when a person:

> (1) . . . purposely or knowingly violates any provision in an order entered under the provisions of the [PDVA] or an order entered under the provisions of a substantially similar statute under the laws of another state or the United States when the conduct which constitutes the violation could also constitute a crime or a disorderly persons offense.
>
> . . .
>
> (2) . . . purposely or knowingly violates an order entered under the provisions of [PDVA] or an order entered under the provisions of a substantially similar statute under the laws of another state or the United States.
>
> [N.J.S.A. 2C:29-9(b)]

Here, there is sufficient evidence that shows defendant committed the predicate act of contempt. On December 1, 2022, plaintiff went to the police station to apply for and obtain a TRO against defendant. Defendant received notice of plaintiff's TRO when she sent a text message about a custody exchange at the police precinct. The judge explained:

> There was no legitimate reason to send the email to plaintiff; it was an act of intimidation. The act of sending plaintiff an email after being served with the TRO is likely to cause alarm to plaintiff since defendant directly violated the terms of the TRO. It is both jarring

20

and alarming to be contacted by the alleged abuser while restraints are in place. Plaintiff is entitled to the full force of the protections provided in the TRO.

The judge was correct in his analysis. We see no reason to disturb the judge's finding that defendant committed the predicate act of contempt of a restraining order, which is grounded in substantial, credible evidence in the record.

We conclude the judge correctly determined defendant's egregious acts of harassment and contempt of a restraining order supported the issuance of an FRO. In sum, plaintiff presented sufficient credible evidence to support both Silver prongs, and under the totality of the circumstances, we see no evidentiary errors, oversight, or abuse of discretion.

To the extent we have not specifically addressed any of defendant's arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3958-22