# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0165-18T3

A.B.,

     Plaintiff-Appellant,

v.

W.C.,

     Defendant-Respondent.

_____

       Argued December 4, 2019 - Decided December 20, 2019

       Before Judges Koblitz, Whipple, and Mawla.

       On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-1876-18.

       Alex Rudolph Blum argued the cause for appellant (Northeast New Jersey Legal Services Corp., attorneys; Alex Rudolph Blum, of counsel and on the briefs).

       John J. McMahon argued the cause for respondent.

PER CURIAM

Plaintiff A.B. appeals from a July 30, 2018 dismissal of a Temporary Restraining Order (TRO) obtained against defendant W.C. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We affirm.

In June 2016, the parties met at a sports bar where plaintiff was employed. They began a dating relationship in the spring of 2017 and lasted until January 2018. During their relationship, the parties and plaintiff's children traveled domestically and internationally, which defendant funded in large part. Defendant also gave plaintiff gifts and funds to meet various expenses during their relationship.

The parties' final vacation together occurred the weekend of January 12, 2018. Approximately one week later, the parties went on a date to the movies. Plaintiff was not feeling well, so afterwards on January 22, defendant texted to ask how she felt. Plaintiff replied, "do not tex[t] me more or call me [please], or if [you do, I will] block you, this is over . . . thanks for everything." Defendant texted the following reply: "You do not have to block me. But it is so easy for you to say it is over. I guess I was never important to you even after everything I did."

A-0165-18T3

On January 25, defendant gave a note containing money to a co-worker and instructed him to place it on plaintiff's vehicle. The note stated:

> Hi [A.B.], here's the money for the movie and babysitter. I hope you're feeling better. I would like for us to talk about it because we are not kids to do this with a text and after everything I did for you, I deserve it. I am a person with feelings. I will not text you because I imagine you blocked me.

Having received no reply, defendant sent plaintiff text messages on January 29, February 2, 3, and 5, expressing that he missed and loved her and asking if he could take her to a concert and take her children to a live show.

Plaintiff filed a domestic violence complaint and obtained a TRO on March 9, 2018. She subsequently amended the complaint in April and May alleging harassment, stalking, and contempt of a domestic violence order as well as a full description of her domestic violence allegations.

In its final iteration, plaintiff alleged a prior history of domestic violence, including a claim defendant went to her job on February 17, 2018, to talk to her, but when she refused, he left angry. Plaintiff claimed when she left work that evening, she drove home and discovered defendant had flattened one of her tires with five nails. At the trial, plaintiff testified it snowed that day and she drove for an hour to get home; when she arrived home, she noticed the flat because she heard air escaping from the tire. Plaintiff testified she sent defendant a

3

message the following day accusing him of damaging her tire and claiming she had a video of him doing so. On cross-examination, plaintiff admitted she fabricated the claim regarding the video.

As predicate acts of domestic violence, plaintiff alleged the note left on her vehicle on January 25, "caused her [to] fear for her safety and the safety of her children." Her complaint also alleged defendant appeared at her job on March 9, near the end of her work shift, and "cut off her vehicle and attempted to start a conversation in the middle of the highway, then showed up at her house and attempted to follow her into her parking garage . . . ." She also alleged on March 9:

> Def[endant] was waiting for pla[intiff] outside of her job. Def[endant] stood in front of pla[intiff's] car and told pla[intiff] to get out and talk to him. Pla[intiff] refused, sped up[,] and continued to head towards pla[intiff's] house. When pla[intiff] got home, def[endant] was there in his car and he was blocking pla[intiff's] way into the parking lot. Def[endant] kept saying that pla[intiff] should return the gifts that he gave the pla[intiff] and if she didn't, def[endant] would kill her.

Plaintiff's complaint alleged she discovered her tire was flattened again after work on March 16. She also alleged on April 22, she was walking home with her children and saw defendant parked two buildings away from her home watching them walk home. On April 24, plaintiff alleged she saw defendant's

vehicle parked in front of her home as she was leaving, the parties saw one another, plaintiff got into her car to drive to defendant's car to video him, and he left.

During her testimony, plaintiff gave varying accounts of the March 9 incident. She testified defendant intercepted her vehicle in different locations, namely, her employer's parking lot, a nearby road, or on a highway, but could not explain precisely where. She offered no testimony to support her allegation that defendant followed her home. Defendant testified he frequented plaintiff's place of employment because it was a sports bar. He conceded he hoped to see plaintiff there. However, he denied following plaintiff home, and instead drove there after she drove away in hopes of speaking with her regarding the demise of their relationship.

When the parties arrived at plaintiff's home, she claimed defendant blocked her vehicle again and threatened to kill her if she did not return the gifts and money he gave her. Plaintiff claimed she contacted the police who arrived within three minutes. However, the detective who responded to plaintiff's call testified she did not relay the death threat to him.

Plaintiff testified defendant was responsible for damaging her tires a second time on April 4. However, she conceded she did not report this alleged

violation of the TRO to police. Moreover, at trial defendant provided video surveillance of her employer's parking lot, revealing no one tampered with plaintiff's vehicle.

Plaintiff testified consistently with the narrative in her complaint regarding the April 22 and 24 incidents, alleging harassment and stalking. However, defendant produced time-stamped pictures of the GPS location of his cellular telephone and a store receipt, evidencing he was nowhere in the vicinity of plaintiff on the dates and times in question.

In his oral opinion dismissing plaintiff's complaint, the trial judge concluded plaintiff's testimony was to "large degrees[,] not believable." The judge stated plaintiff gave "different versions of what happened during [the March 9] encounter, where it happened and under what circumstances." The judge found defendant's attempts to contact plaintiff did not constitute harassment because his "efforts to communicate with [her] were an attempt . . . to either reestablish the relationship or at least obtain an explanation as to why she had ended it after several years . . . ." Similarly, the judge found "the contents of the note, which had to do with money for a babysitter and taking children to a movie, . . . even if unwanted, does not fit any definition of harassment." The judge concluded plaintiff's allegation that defendant

threatened to kill her was "not believable" because she did not report it to the police.

Referring to the alleged history of domestic violence and the March 16 predicate act alleged in the complaint, the judge found plaintiff's testimony did

> not establish that [defendant] had anything to do with the tires becoming flat or that he put nails in the tire and her testimony that on one event where she drove from [work] to [home] in the snow for an hour with . . . nails that she believed [defendant] had put in her tire, without knowing until she got to her home that the tire was flat and her testimony that it was still leaking air at that time and she could hear it, is also not believable.

Regarding the April 22 and 24 predicate acts alleged in the complaint, the judge concluded defendant's "testimony that he was elsewhere and the receipts he provided to prove that he was somewhere else on both of those occasions is more convincing than [plaintiff's] testimony that he was at or near her home."

## I.

> The scope of appellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974). Deference is especially appropriate "when the evidence is largely testimonial and involves questions of credibility." In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997). Because a trial court "'hears the case, sees and observes the witnesses, [and] hears them testify,' it has a better perspective than a

7

reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)) (alterations in original).  Therefore, an appellate court should not disturb the "factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms, 65 N.J. at 484.  The appellate court should "exercise its original fact finding jurisdiction sparingly and in none but a clear case where there is no doubt about the matter." Ibid.

Furthermore, matrimonial courts possess special expertise in the field of domestic relations. See Brennan [v. Orban], 145 N.J. [282,] 300-01 (1996). . . .

Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding.  As noted previously by this Court, the Legislature "has reposed grave responsibilities on Family Part judges to ensure the safety and well-being of women and children in our society . . . .  We are confident that they can successfully balance the interests of society in deterring the evils of domestic violence and caring for families." Brennan, 145 N.J. at 304-05.

[Cesare v. Cesare, 154 N.J. 394, 411-13 (1998)].

On appeal, plaintiff argues the trial judge failed to make any findings regarding the predicate act of stalking.  She argues the judge's findings regarding credibility and harassment, were against the weight of the evidence.

II.

Plaintiff asserts she proved harassment pursuant to N.J.S.A. 2C:33-4(a) and (c) and the judge's findings to the contrary were error. We disagree.

Our Supreme Court has stated:

> The harassment statute provides in relevant part:
>
> > [A] person commits a petty disorderly persons offense if, with purpose to harass another, he:
> >
> > a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
> >
> > . . . .
> >
> > or
> >
> > c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
> >
> > A communication under subsection a. may be deemed to have been made either at the place where it originated or at the place where it was received.
> >
> > [N.J.S.A. 2C:33-4.]
>
> . . . .

A-0165-18T3

A violation of subsection (a) requires the following elements: (1) defendant made or caused to be made a communication; (2) defendant's purpose in making or causing the communication to be made was to harass another person; and (3) the communication was in one of the specified manners or any other manner similarly likely to cause annoyance or alarm to its intended recipient.

. . . .

The purpose to be served by enactment of the harassment statute is to make criminal, private annoyances that are not entitled to constitutional protection. . . . Thus, the substantive criminal offense proscribed by subsection (a) "is directed at the purpose behind and motivation for" making or causing the communication to be made.

. . . .

The New Jersey Code of Criminal Justice defines "purposely" as follows: "A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result." N.J.S.A. 2C:2-2(b)(1).

. . . .

A finding of a purpose to harass may be inferred from the evidence presented. State v. McDougald, 120 N.J. 523, 566-67 (1990); State v. Avena, 281 N.J. Super. 327, 340 (App. Div. 1995). Common sense and experience may inform that determination. State v. Richards, 155 N.J. Super. 106, 118 (App. Div. 1978).

. . . .

> [S]ubsection (a) proscribes a single act of communicative conduct when its purpose is to harass. Under that subsection, annoyance means to disturb, irritate, or bother. . . . In contrast to subsection (a), which targets a single communication, subsection (c) targets a course of conduct. Subsection (c) proscribes a course of alarming conduct or repeated acts with a purpose to alarm or seriously annoy an intended victim.
>
> [State v. Hoffman, 149 N.J. 564, 576-78, 80 (1997) (internal citation omitted) (emphasis omitted).]

Plaintiff did not meet her burden of proof to establish harassment because she failed to prove defendant's intent was to disturb, bother, seriously annoy, or alarm her as defined by N.J.S.A. 2C:33-4(a) or (c), respectively. The contents of defendant's texts and the note he had delivered to plaintiff contained no threats or words to infer an intent to annoy or alarm as contemplated by the PDVA.

Had defendant intercepted plaintiff's vehicle in the middle of a road or a highway on March 9, as plaintiff claimed, such conduct would be alarming or seriously annoying as defined by N.J.S.A. 2C:334-4(a) and (c). Indeed, even if defendant's intent was to speak with plaintiff regarding the reasons for the demise of their relationship, the court could infer the means he used to seek out plaintiff constituted harassment. However, the inconsistency of plaintiff's testimony, which did not prove the interaction occurred on a roadway, but based

11

on defendant's testimony, more logically took place in the parking lot of a sports bar defendant frequented, does not persuade us the judge erred.

We also reach the same conclusion regarding plaintiff's assertion defendant followed her home. Plaintiff offered no support for this claim. Given the parties' longstanding relationship, defendant was familiar with how to get to plaintiff's home from her job. For these reasons, the record supports the judge's finding that defendant did not follow plaintiff home, and instead traveled there on a separate route after she drove by him in the parking lot.

Furthermore, the judge did not err when he concluded plaintiff did not prove defendant threatened to kill her. Plaintiff alleged she informed the officer who responded to her residence on March 9, 2018, about the threat. The officer testified she did not inform him of the alleged threat. On cross-examination, plaintiff asserted the officer lied about the fact that she did not tell him. The totality of the evidence in the record, namely, plaintiff's lack of credibility in describing defendant's conduct, defendant's explanation of the reasons for traveling to her home, and the lack of any indication the officer testified incredibly confirms this allegation was unproven. The sum of the evidence supports the trial judge's conclusion defendant did not threaten plaintiff.

Plaintiff's allegation defendant harassed her by flattening her tires also suffered due to her lack of credibility. As part of the history of domestic violence, plaintiff alleged defendant previously damaged her tires and there was a video of the incident, yet she conceded there was no such evidence. Given this background, the judge did not err when plaintiff alleged similar conduct as a predicate act, and defendant produced objective video evidence showing he was not near her vehicle on the day of the incident.

Similarly, on appeal, plaintiff asserts the judge improperly took judicial notice when he concluded it was impossible for her to drive an hour in the snow with nails in her tires and arrive home with them still deflating. Again, the judge concluded that plaintiff's testimony was not credible. He did not take judicial notice of facts, which contemplates recognition of universally known facts, facts of common notoriety, or generalized knowledge. N.J.R.E. 201(b).

Plaintiff also did not meet her burden of proof regarding the alleged acts of harassment in April 2018. Defendant adduced objective alibi evidence demonstrating he was elsewhere when she allegedly saw him outside her residence on two occasions. This evidence and her lack of credibility rebutted plaintiff's unsupported allegations.

III.

A-0165-18T3

N.J.S.A. 2C:12-10(a) defines stalking as:

> (1) "Course of conduct" means repeatedly maintaining a visual or physical proximity to a person; directly, indirectly, or through third parties, by any action, method, device, or means, following, monitoring, observing, surveilling, threatening, or communicating to or about, a person, or interfering with a person's property; repeatedly committing harassment against a person; or repeatedly conveying, or causing to be conveyed, verbal or written threats or threats conveyed by any other means of communication or threats implied by conduct or a combination thereof directed at or toward a person.
>
> (2) "Repeatedly" means on two or more occasions.
>
> (3) "Emotional distress" means significant mental suffering or distress.
>
> (4) "Cause a reasonable person to fear" means to cause fear which a reasonable victim, similarly situated, would have under the circumstances.

Furthermore,

> [a] person is guilty of stalking, a crime of the fourth degree, if he purposefully or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for his safety or the safety of a third person or suffer other emotional distress.
>
> [N.J.S.A. 2C:12-10(b).]

A-0165-18T3

Plaintiff argues the trial judge made no findings regarding the predicate act of stalking. She asserts the entirety of the allegations set forth in her complaint represent a "pattern of conduct" and prove stalking.

The judge's decision lacks an explicit finding on stalking. However, his findings that plaintiff failed to prove any of the predicate acts of domestic violence also demonstrated plaintiff did not prove defendant repeatedly surveilled, followed, monitored, threatened, or harassed her, or interfered with her property, to meet the definitional elements of N.J.S.A. 2C:12-10(a)(1)-(4).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-0165-18T3