# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3692-23

T.M.N.,[1]

    Plaintiff-Appellant,

v.

E.R.,

    Defendant-Respondent.

_____

Submitted November 5, 2025 – Decided November 14, 2025

Before Judges Firko and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FV-07-4109-23.

Evan F. Nappen Attorney at Law, PC, attorneys for appellant (Louis P. Nappen, on the brief).

Deininger & Associates, LLP, attorneys for respondent (Christopher L. Deininger, of counsel and on the brief).

---

[1] We use initials and a pseudonym to protect the confidentiality of the parties. R. 1:38-3(d)(10).

PER CURIAM

Plaintiff T.M.N. appeals from a June 11, 2024 Family Part order dismissing her temporary restraining order (TRO) against her former paramour, defendant E.R., and denying her request for a final restraining order (FRO) pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Plaintiff contends the judge erred by failing to find that defendant committed the predicate act of harassment and by failing to find plaintiff requires continued protection. Because we find no reason to disturb the judge's findings, we affirm.

I.

The facts were established at the four-day trial, which was conducted in December 2023, and March, April, and June 2024. Both parties were represented by counsel. Plaintiff testified that she has known defendant for many years. In August 2016, plaintiff entered into a contract with defendant and his company, which provides storage lockers for individuals to lease and store their firearms. After plaintiff became one of defendant's clients, the parties' relationship became platonic. In late 2019 they began dating. Defendant testified that while the parties were dating, he developed a relationship with

A-3692-23

plaintiff's daughter from another marriage, "Maria," who was seven years old at the time.

Defendant described his relationship with Maria at trial, contending that she sees him as a "father figure." He explained that he sometimes took Maria to school, church, and her friends' houses. Maria, who was fifteen years old at the time of trial, testified that defendant "was a big part of [her] life." Defendant bought groceries and gifts for plaintiff and Maria, took them out to dinner, and fixed things for them. Plaintiff became an investor and partner in one of defendant's businesses, and Maria was filmed in a "product demonstration" video.

Defendant testified that the parties ended their relationship in 2020. In contrast, plaintiff testified they broke up in May 2022 after she discovered that defendant took money from her home and did not return it. Defendant countered that he ended the relationship but continued to stay in touch with Maria by phone and text messaging. Defendant testified that after the parties broke up, plaintiff sent him text messages saying Maria missed him and invited him to Maria's lacrosse games. Between March 2022 and July 2022, the parties exchanged text messages regarding plaintiff's property stored at defendant's storage company.

A-3692-23

Eventually, defendant stated he texted plaintiff to "stop harassing" him and blocked her number because she was calling him "ad nauseam."

In August 2022, plaintiff filed a complaint against defendant in the Law Division alleging theft, and conversion, later amending it to include breach of contract claims. After filing the lawsuit, plaintiff testified that she texted defendant twice. Defendant retained counsel and filed an amended answer and counterclaim to the Law Division matter. According to defendant, he had no direct contact with plaintiff thereafter. However, plaintiff learned that Maria was still communicating with defendant and disapproved of her communications, resulting in plaintiff taking away Maria's electronic devices.

Defendant testified that in February 2023 Maria called him and asked him to call her an Uber so she could see a boy. Defendant was against Maria's idea and ultimately called plaintiff and left her a voicemail message. Maria ended up going to the boy's house by way of the boy's parents, who ordered an Uber for her. Two witnesses, the boy's mother and father, testified to the events of Maria's arrival at their home to see their son and calling the Uber. After returning home, defendant testified that Maria told him plaintiff was "abusive" towards her, and she texted her friend "to call 9-1-1."

A-3692-23

Three police officers responded to the call from Maria's friend regarding the dispute between plaintiff and Maria. While the officers spoke to Maria, she allegedly reported plaintiff was "yell[ing] at her" and that she gets "very intense and frustrated," but there had not been any physical abuse. Defendant testified that Maria told him everything that happened the previous night. After this incident, plaintiff took Maria out of school, in New Jersey, and sent her to another state with her caretaker, and then to a "secret" location in yet another state.

On June 16, 2023, in the civil litigation, defendant's counsel served a subpoena for Maria's deposition. A week later, plaintiff obtained a TRO against defendant, which was served upon him. In her domestic violence complaint, plaintiff alleged defendant was told not to contact Maria but continued to do so. Plaintiff alleged that defendant has been "harassing" Maria by text and phone "in an attempt to reconcile their relationship that ended last year."

Plaintiff claimed she relocated Maria to another state for her "safety," and that defendant had "court papers" served on Maria, and so he was therefore aware of her new address. Plaintiff also alleged how in the past, defendant made "threats" to take Maria away from her and that he "has stolen money, guns[,] and ammunition from her." Defendant claimed plaintiff never told him to "stop"

A-3692-23

having contact with Maria. Plaintiff's complaint alleged the predicate acts of harassment and stalking. Five days later, defendant obtained a TRO against plaintiff based on the predicate act of harassment.

At the FRO hearing, the judge considered the testimony of twelve witnesses, including the parties, Maria, her caregiver, police officers, and fact witnesses, as well as items moved into evidence. In her comprehensive fifty-six-page oral decision, the judge found plaintiff and Maria were "not credible," noting plaintiff did not present corroborating evidence supporting her allegations that defendant was harassing her through his text messages to Maria. The judge reasoned that Maria's testimony was not credible because her testimony and answers "seemed forthcoming and . . . seemed to mimic [plaintiff's] testimony." The judge found Maria was "not being honest." The judge stated defendant was "somewhat credible" because there was no inconsistent or contradictory statement provided, aside from his criminal history. The judge found the fact witnesses were credible.

The judge analyzed subsections (a), (b), and (c) of the harassment statute, N.J.S.A. 2C:33-4. The judge highlighted plaintiff failed to corroborate her testimony that defendant was harassing Maria and how there was "nothing to support any intent or purpose on behalf of [defendant]." The judge also stressed

there was no evidence of "threats" made by defendant to Maria "insofar as taking her away." The judge credited defendant's testimony that he had a "true concern" for Maria's safety, and his text messages to plaintiff stating how if she put her hands on Maria again, he would call the Division of Child Protection and Permanency (DCPP), "were done in the interest of [Maria's] welfare."

The judge emphasized that plaintiff's allegation defendant stole from her would be resolved in the Law Division action. The judge found the record was devoid of any testimony or evidence supporting plaintiff's contention that defendant made anonymous communications, used offensively coarse language, or caused annoyance or alarm. The judge noted there was no testimony "about repeatedly committed acts at all" and most of the testimony revealed the parties had not seen or talked to each other in months.

The judge also determined that plaintiff failed to establish the predicate act of stalking under N.J.S.A. 2C:12-10.1. The judge reiterated that there was no course of conduct, no showing of repeated harassment, and no evidence defendant intended to harm Maria.

The judge considered the seven statutory factors enumerated in N.J.S.A. 2C:25-29(a), noting there was no previous history of domestic violence, no existence of immediate danger to person or property, no financial circumstances

A-3692-23

between the parties, no verifiable order of protection from another jurisdiction, no custody or parenting time issues, and no course of control. The judge dismissed plaintiff's TRO because she did not satisfy both prongs under Silver.[2] The judge also dismissed defendant's TRO.

Plaintiff appeals, contending the judge erred in failing to find that defendant committed the predicate act of harassment. Plaintiff also argues the judge erred by failing to find she required an FRO. We disagree. Defendant does not challenge the dismissal of his TRO.

II.

Generally, "findings by a trial court are binding on appeal when supported by adequate, substantial, [and] credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). "[D]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of

---

[2] Silver v. Silver, 387 N.J. Super. 112, 126-27 (App. Div. 2006).

credibility.'" MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).

We will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions and will review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

The purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." G.M. v. C.V., 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); see also N.J.S.A. 2C:25-18. Consequently, "[o]ur law is particularly solicitous of victims of domestic violence," J.D., 207 N.J. at 473 (alteration in original) (quoting State v. Hoffman, 149 N.J. 564, 584 (1997)), and courts will "liberally construe[] [the PDVA] to achieve its salutary purposes." Cesare, 154 N.J. at 400.

When determining whether to grant an FRO pursuant to the PDVA, the judge must make two determinations. See Silver, 387 N.J. Super. at 125-27.

Under the first prong of <u>Silver</u>, "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." <u>Id.</u> at 125 (citing N.J.S.A. 2C:25-29(a)).

If the court finds the defendant committed a predicate act of domestic violence, then the second inquiry under <u>Silver</u> "is whether the court should enter a restraining order that provides protection for the victim." <u>Id.</u> at 126. While the second prong inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)][(7)], to protect the victim from an immediate danger or to prevent further abuse." <u>Id.</u> at 127.

"[T]he Legislature did not intend that the commission of one of the enumerated predicate acts of domestic violence automatically mandates the entry of a domestic violence restraining order." <u>Silver</u>, 387 N.J. Super. at 126-27. The factors which the court should consider include, but are not limited to:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;

A-3692-23

(3) The financial circumstances of the plaintiff and defendant;

(4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety;

(6) The existence of a verifiable order of protection from another jurisdiction; and

(7) Any pattern of coercive control against a person that in purpose or effect unreasonably interferes with, threatens, or exploits a person's liberty, freedom, bodily integrity, or human rights with the court specifically considering evidence of the need for protection from immediate danger or the prevention of further abuse. If the court finds that one or more factors of coercive control are more or less relevant than others, the court shall make specific written findings of fact and conclusions of law on the reasons why the court reached that conclusion. Coercive control may include, but shall not be limited to:

> (a) isolating the person from friends, relatives, transportation, medical care, or other source of support;
>
> (b) depriving the person of basic necessities;
>
> (c) monitoring the person's movements, communications, daily behavior, finances, economic resources, or access to services;
>
> (d) compelling the person by force, threat, or intimidation, including, but not limited to, threats based on actual or suspected immigration status;

11

(e) threatening to make or making baseless reports to the police, courts, [DCPP] within the Department of Children and Families, the Board of Social Services, Immigration and Customs Enforcement (ICE), or other parties;

(f) threatening to harm or kill the individual's relative or pet;

(g) threatening to deny or interfere with an individual's custody or parenting time, other than through enforcement of a valid custody arrangement or court order pursuant to current law including, but not limited to, an order issued pursuant to Title 9 of the Revised Statutes; or

(h) any other factors or circumstances that the court deems relevant or material.

[N.J.S.A. 2C:25-29(a).]

Although the court is not required to incorporate all of these factors in its findings, "the [PDVA] does require that 'acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties.'" Cesare, 154 N.J. at 402 (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)). Whether a restraining order should be issued depends on the seriousness of the predicate offense, on "the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment, and physical abuse," and on "whether immediate

danger to the person or property is present." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995).

The court must also exercise care to "distinguish between ordinary disputes and disagreements between family members and those acts that cross the line into domestic violence." R.G. v. R.G., 449 N.J. Super. 208, 225 (App. Div. 2017). The PDVA is not intended to encompass "ordinary domestic contretemps." Corrente, 281 N.J. Super. at 250. Rather, "the [PDVA] is intended to assist those who are truly the victims of domestic violence." Silver, 387 N.J. Super. at 124 (quoting Kamen v. Egan, 322 N.J. Super. 222, 229 (App. Div. 1999)). The second prong of Silver "requires the conduct must be imbued by a desire to abuse or control the victim." R.G., 449 N.J. Super. at 228 (citing Silver, 387 N.J. Super. at 126-27).

A.

Plaintiff argues the judge misapplied the law in determining that defendant did not commit the predicate act of harassment. Plaintiff maintains the "undisputed facts" show that defendant attempted to "lure" then thirteen-year-old Maria out-of-state without plaintiff's knowledge or consent. Plaintiff contends the judge recognized defendant had "no standing" to take Maria away because he is not her parent or stepparent. But according to plaintiff, the judge

13

erred in not finding defendant's actions were committed with a purpose to annoy or alarm plaintiff.

Defendant counters that plaintiff's au pair confirmed the family left New Jersey after the February 2023 "crisis" and was "coached" to say Maria was relocated out of plaintiff's "fear" he might do something to Maria. Defendant contends the real reason for plaintiff doing so was to get Maria far away from the boyfriend she "engaged sexually" before DCPP got involved. Defendant argues the police were investigating what happened, and plaintiff had a "history" involving reports to DCPP. Defendant contends on cross-examination, plaintiff testified she had no fear of him and that he never acted inappropriately towards her.

N.J.S.A. 2C:33-4 defines harassment as:

> Except as provided in subsection e., a person commits a petty disorderly persons offense if, with purpose to harass another, he:
>
> a. Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

A communication under subsection a. may be deemed to have been made either at the place where it originated or at the place where it was received.

A finding of harassment requires proof of an intent or purpose to harass. State v. Hoffman, 149 N.J. 564, 576-77 (1997). A purpose to harass may be inferred from the evidence. State v. McDougald, 120 N.J. 523, 566-67 (1990). An assertion by a plaintiff that he or she felt harassed is a subjective belief and insufficient to prove a purpose or intent to harass. J.D., 207 N.J. at 487. A violation of N.J.S.A. 2C:33-4(c), by contrast, requires proof of a course of conduct. Id. at 478. Common sense and experience may also inform a determination or finding of purpose. Hoffman, 149 N.J. at 577 (citing State v. Richards, 155 N.J. Super. 106, 118 (App. Div. 1978)). "[T]he decision about whether a particular series of events rises to the level of harassment or not is fact-sensitive." J.D., 207 N.J. at 484.

Here, plaintiff relies on Maria's testimony to support her argument that defendant harassed her and Maria by continuing to communicate with Maria. But as the judge noted in her oral opinion, plaintiff and Maria were not credible witnesses. Moreover, the record shows plaintiff monitored and controlled

15

Maria's use of phones, the internet, and an "app" she used to make calls, after February 2023. Thus, defendant was incapable of having any contact with Maria between February 2023 and May 30, 2023—the day before plaintiff attempted to report "domestic harassment" to the police. Therefore, the judge properly concluded that defendant did not harass plaintiff or Maria during this time period or any other time. Further, the record indicates plaintiff destroyed all of Maria's phones and electronic devices through which she purportedly communicated with defendant. Therefore, plaintiff failed to proffer any corroborating evidence to support her claim of harassment.

## B.

Plaintiff also argues that the judge erred in concluding she did not satisfy the second Silver prong. Because plaintiff failed to prove by a preponderance of the evidence the commission of any predicate act of domestic violence by defendant, we need not address the second Silver prong.

We conclude the judge correctly denied both parties' request for an FRO and properly determined defendant did not commit the predicate act of harassment. In sum, plaintiff failed to present sufficient credible evidence to support her allegation of harassment, and we see no evidentiary errors, oversight, or abuse of discretion.

A-3692-23

To the extent we have not specifically addressed any of plaintiff's arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3692-23