# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0328-24

M.Z.,[1]

    Plaintiff-Respondent,

v.

V.R.,

    Defendant-Appellant.

_____

          Submitted October 20, 2025 – Decided December 9, 2025

          Before Judges Walcott-Henderson and Bergman.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FV-13-0080-25.

          The Tormey Law Firm, LLC, attorneys for appellant (Travis J. Tormey, of counsel; Jeffrey A. Skiendziul, on the briefs).

          M.Z., self-represented respondent.

PER CURIAM

---

[1] We use initials to protect the confidentiality of the victim and children in these proceedings. R. 1:38-3(d)(9) and (12).

Defendant V.R. appeals from the entry of a final restraining order ("FRO") entered against her under the Prevention of Domestic Violence Act ("PDVA"), N.J.S.A. 2C:25-17 to -35, after a two-day hearing. Having considered the arguments in light of the record and applicable legal principles, we affirm.

I.

The facts which follow are based on the testimony and evidence adduced at a two-day trial. Defendant and plaintiff were formerly married and have two children together, born in 2019 and 2022. Their marriage was dissolved in July 2023 by a Dual Final Judgment of Divorce, which incorporated a marital settlement agreement ("MSA"). The MSA incorporating a March 2023 consent order granted the parties joint legal custody, with defendant designated as parent of primary residence and plaintiff as parent of alternate residence.

Post-judgment, the family became involved in litigation addressing parental fitness, custody, parenting time, and allegations of harassment.[2] Several court orders relating to custody, restraints on harassment, and supervised parenting time were entered in a parallel ongoing family neglect litigation ("FN") filed by the Division of Child Protection and Permanency

---

[2] We issue concurrently today a companion opinion in A-1023-24 concerning those issues.

A-0328-24

("DCPP"). The parties had also entered into a civil restraints agreement in January 2024, whereby defendant consented to not contact plaintiff's current or future employers about the status of their family and to not harass the plaintiff and his immediate family members. The FN orders and the civil restraints agreement were in effect on the date of incident which we describe hereafter.

On July 5, 2024, defendant arrived unannounced at plaintiff's apartment complex at approximately 8:30 a.m. Plaintiff, who testified he had not disclosed his address and was unaware of how defendant located his residence, stated defendant rang his doorbell, called for their children outside his windows, and filmed or took photographs of his apartment's interior. Plaintiff recorded the incident, directed defendant to leave, and called police. By the time police arrived, defendant was gone and plaintiff left to seek a restraining order, spending much of the day at the courthouse. Plaintiff obtained a Temporary Restraining Order ("TRO") against defendant that same day.

While plaintiff was securing the TRO, defendant returned, leaving toys and writing chalk messages on the sidewalk outside plaintiff's apartment, including hearts and phrases such as "Mom loves you." That evening, plaintiff encountered defendant in the apartment parking lot as he unloaded his son from

3

his vehicle. Defendant approached them and told her son "[n]ot to trust anyone" and told plaintiff, "I'm going to put you in jail."

At that time, an April 2024 FN order was in effect, which granted primary physical custody of the children to plaintiff and permitted defendant only supervised therapeutic visitation. The January 2024 civil restraints agreement was also in effect at that time.

Defendant testified that her visit to the complex was for an apartment viewing, and she did not have the purpose or intent to harass plaintiff. The evidence also showed that after the entry of the FN order and the execution of the civil restraints agreement, defendant attempted to communicate with plaintiff. Those communications concerned the children and were sent through voicemails and emails, including a voicemail asking to speak with the children, and an email to DCPP copied to plaintiff alleging plaintiff's noncompliance with court orders.

After the hearing concluded, in a detailed oral decision, the court found that defendant committed the predicate offense of harassment, and that it was necessary to enter an FRO to protect plaintiff from future acts of harassment.

On appeal defendant contends the trial court committed reversible error by entering an FRO against her. Defendant contends the evidence failed to

establish she harassed plaintiff because her conduct was directed solely at her children, not plaintiff, and the trial court improperly found a predicate act of domestic violence and a continuing need for a restraining order.

II.

The scope of appellate review of a Family Part court's findings following a bench trial is limited. N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015) (citing Cesare v. Cesare, 154 N.J. 394, 411 (1998)). We owe substantial deference to the Family Part's findings of fact because of its special expertise in family matters. Cesare, 154 N.J. at 413 (citations omitted). Such deference is particularly proper "when the evidence is largely testimonial and involves questions of credibility." Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).

We will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions and review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

A-0328-24

The PDVA authorizes an FRO to be issued if two criteria are met.  Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006).  The plaintiff seeking the FRO must prove that (1) "one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred," and (2) that the order is necessary to protect plaintiff "from an immediate danger or to prevent further abuse."  Id. at 125, 127.

Harassment is one such predicate act.  N.J.S.A. 2C:25-19(a)(13).  Harassment is defined at N.J.S.A. 2C:33-4, which provides in pertinent part:  A person commits harassment under subsection (c), if they engage "in any course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person."  "[A]nnoyance" is defined as to "disturb, irritate, or bother."  State v. Hoffman, 149 N.J. 564, 580 (1997).

"A finding of a purpose to harass may be inferred from the evidence."  Id. at 577 (citing State v. McDougald, 120 N.J. 523, 566-67 (1990); see also State v. Avena, 281 N.J. Super. 327, 340 (App. Div. 1995)).  "Common sense and experience may inform that determination."  Ibid.  (citing State v. Richards, 155 N.J. Super. 106, 118 (App. Div. 1978)).  In addition, prior acts . . . are to be considered in assessing the defendant's purpose.  See McGowan v. O'Rourke, 391 N.J. Super. 502, 506 (App. Div. 2007).

6

This inquiry is necessarily fact specific, Silver, 387 N.J. Super. at 127-28, requiring consideration of the following factors under N.J.S.A. 2C:25-29(a):

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
> (2) The existence of immediate danger to person or property;
> (3) The financial circumstances of the plaintiff and defendant;
> (4) The best interests of the victim and any child;
> (5) In determining custody and parenting time the protection of the victim's safety; and
> (6) The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a)(1)-(6).]

Applying these principles, we are satisfied the trial court's factual findings and legal conclusions are amply supported by substantial, credible evidence adduced at the hearing.

Concerning the predicate act under the first prong of Silver, the record clearly shows that on July 5, 2024, defendant arrived at plaintiff's residence without announcement, entered upon the property where she was not authorized, filmed or photographed the apartment's interior, drew chalk messages, and left toys for the children. Later that day, she again approached plaintiff and the children in the parking lot, engaged in emotionally charged communications, including telling her son "not to trust anyone" and telling plaintiff "I'm going to

7

put you in jail" in front of the child. Defendant did not substantially dispute the above factual contentions of plaintiff.

These incidents occurred against a backdrop of FN custody and visitation orders that specifically required supervised contact between defendant and the children, and an agreement barring harassment of plaintiff. The trial court, having considered the testimony and demeanor of both parties, found that defendant's explanations for her presence were not credible, specifically finding:

> I did not find the defendant credible when she said . . . she got there at 8:30 a.m. so she could go around and see everything when her appointment was at 3:30 p.m. That wasn't believable and . . . she just happened to be riding by and saw the child in the window. Again, not credible."

The court further found defendant engaged in conduct that "invade[d] on his territory, invade[d] on his privacy" by repeatedly entering upon plaintiff's property, taking photographs through the window, and leaning into plaintiff's car. As the trial court observed, "nobody wants somebody from the outside pointing cameras inside your house taking photographs, which is what she's doing."

Defendant argues her actions were motivated solely by a desire to see her children and not to harass plaintiff. We are unpersuaded. We conclude the trial court considered this rationale but correctly found the conduct was not justified,

A-0328-24

particularly given defendant's knowledge of the court orders restricting contact with plaintiff and the children and a consent civil restraints agreement requiring her not to harass plaintiff.

We further conclude defendant's proffered evidence of a prior scheduled apartment viewing to justify being at the apartment complex and was not there to harass plaintiff lacks merit. The court appropriately rejected this contention, again finding her testimony lacked credibility and her conduct was harassing against the backdrop of the prior orders and agreements barring contact with defendant and the children.

We further reject defendant's alternative argument that the predicate act of harassment was not established because plaintiff's reaction was merely subjective. We conclude there was substantial objective evidence of the negative effect on plaintiff's privacy that was clear on its face based on defendant's previous unauthorized voice messages/emails, and her direct unauthorized contact with plaintiff and the children two separate times on July 5th, contrary to the mandates in previous orders barring such unsupervised contact.

We determine the record amply supported the court's finding by a preponderance of the evidence that defendant committed the predicate act of

9

harassment under N.J.S.A. 2C:33-4(c). We concur with the trial court that defendant's repeated and alarming actions were harassing because they were likely to disturb, irritate, or bother plaintiff, and her conduct was "in one of the specified manners or any other manner similarly likely to cause annoyance or alarm." Hoffman, 149 N.J. at 576, 580.

Nor do we perceive error in the trial court's assessment of the second prong of Silver in finding an FRO was necessary to prevent future harm to plaintiff. The court found defendant's persistent disregard of boundaries, agreements and court orders, and the pattern of conduct created a reasonable risk of recurrence absent judicial intervention, specifically finding "unless I issue a final restraining order, . . . she will continue to search him out wherever he and the children are and intrude on their reasonable and legitimate expectation of privacy." The record contains overwhelming, substantial, and credible evidence supporting that without the entry of an FRO, defendant would continue to harass plaintiff.

To the extent we have not addressed any of defendant's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0328-24